UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ENERGY PARTNERS OF DELAWARE, LTD.,        *    CIVIL ACTION
D/B/A ENERGY PARTNERS, LTD.

VERSUS                                    *    NO. 05-6641

DOMINION EXPLORATION
& PRODUCTION, INC., ET AL             *    SECTION "L"(3)

ORDER AND REASONS

Pending before the Court is the Motion to Remand and for Attorneys' Fees of Plaintiff,

Energy Partners, Ltd. ("Energy Partners").  This motion came for hearing with oral argument

before the Court on Wednesday, March 8, 2006.  For the following reasons, the motion is

GRANTED IN PART AND DENIED IN PART.

I.  Factual and Procedural Background

This case arises from a dispute among three companies regarding the payment of

overriding mineral royalties on production from two leases located in federal waters offshore of

Louisiana.  In several agreements in 1996 and 1997, CNG Producing Company assigned its

leasehold interests in several wells in the South Timbalier Area, Federal Offshore Leases OCS-G

1568 and 1569, to Hall-Houston Oil Company.  Plaintiff Energy Partners merged with Hall-

Houston, the assignee, and has assumed responsibility for all of Hall-Houston's obligations.

CNG Producing Company, the assignor, has changed its name to Dominion Exploration &

Production, Inc. ("Dominion"), a Defendant in this proceeding.   In 1998, Hall-Houston (now

Plaintiff Energy Partners), the assignee, signed a Farmout Agreement that farmed out several of

the same leases and wells to Defendant Cheyenne Petroleum Company ("Cheyenne").

On July 28, 2005, Defendant Dominion made demand upon Defendant Cheyenne for payment of overriding royalties allegedly due on wells in Lease OCS-G 1569.  Plaintiff Energy Partners received a carbon copy of the demand.  Neither Cheyenne nor Energy Partners responded to this demand.  Dominion again made demand upon Cheyenne and Energy Partners on October 5, 2005.  In response, Cheyenne alleged that it either does not owe the royalties on this production, or that it is entitled to reimbursement for the same under the Farmout Agreement it has with Energy Partners.  Plaintiff Energy Partners responded by denying liability for the royalties.

On November 15, 2005, Plaintiff Energy Partners filed the instant suit in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana, and named both Dominion and Cheyenne as Defendants.  Energy Partners instituted a concursus proceeding and seeks a declaratory judgment that Dominion is not owed any overriding royalties.  Energy Partners also deposited $2,777,082.16 into the registry of the court, which sum represents Energy Partners' estimate of Dominion's alleged royalty claim.

On December 20, 2005, Dominion removed the case to this Court, and premised federal jurisdiction upon the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. 1331 *et seq*.  Although Cheyenne did not consent to removal, Dominion alleged in the Notice of Removal that Cheyenne's consent was not required because "Cheyenne shares identical interest with Energy Partners in connection with the mainspring of the Petition" and that "Cheyenne should be aligned with Energy Partners for the purposes of removal."

On January 18, 2006, Energy Partners filed the instant Motion to Remand and for Attorneys' Fees.  Energy Partners argues that Dominion's notice of removal is defective on its

face because it lacks Cheyenne's consent, and that the case must be remanded because of this defect.

## II.  Plaintiff's Motion to Remand

In its Motion to Remand, Plaintiff Energy Partners argues that removal obviously was not proper because of Dominion's failure to obtain Cheyenne's consent to removal.  In response to Dominion's argument that Cheyenne is aligned in interest with Energy Partners, Plaintiff argues that a simple reading of the Petition demonstrates the differences in position between Cheyenne and Energy Partners.  Energy Partners argues that the Court should not consider Cheyenne a "plaintiff" for purposes of removal.  Moreover, Energy Partners argues that because the case is a concursus proceeding, Louisiana law requires that each party be treated as both a plaintiff and defendant.  Therefore, the consent of all parties is required for removal, in Energy Partners' view.

Dominion counters that the Court clearly has federal question jurisdiction under the OCSLA, and that Cheyenne's consent to removal was not required.  Dominion argues that the Court has the inherent power to realign parties in accordance with their interests, and that the Court should only consider the "mainspring," or substantial part, of the Petition to determine how the parties should be aligned.  Dominion argues that Energy Partners and Cheyenne have the same interest the central question in this case – whether Dominion is owed any overriding royalties.  According to Dominion, because this question constitutes the "mainspring" of the Petition, the Court should consider Cheyenne a "plaintiff" for purposes of removal, which would vitiate the need for Cheyenne's consent to removal.

### III.  Law and Analysis

Generally, a defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction.  28 U.S.C. 1441(a).   The removing party bears the burden of establishing that federal jurisdiction exists at the time of removal.  *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 253 (5th Cir. 1961).

Pursuant to 28 U.S.C. 1446(b), a petition for removal must be filed within thirty days of service of the petition on the defendant.  When a removal petition is defective for non-jurisdictional reasons, a party seeking remand must file a motion to remand within thirty days of filing of the notice of removal.  28 U.S.C. 1447(c).  If a defect in the removal petition is jurisdictional, the district court shall remand the case to state court, and the motion to remand may be brought at any time before final judgment.  28 U.S.C. 1447(c).

The Fifth Circuit has long held that 28 U.S.C. 1446 requires all defendants to join in or consent to the removal petition.  *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 423 (5th Cir. 1990);  *Harris v. Edward Hyman Co.*, 664 F.2d 943, 944 n.3 (5th Cir. 1981).  However, the failure of all defendants to join in or consent to the removal petition within thirty days of service is not a jurisdictional defect.  *Johnson*, 892 F.2d at 423; *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1263 (5th Cir. 1988); *Harris*, 664 F.2d at 945 (a defendant's failure to join timely in a removal petition "does not affect the jurisdiction of the district court").[1]

---

[1] A district court may infer the consent of a non-removing defendant when the defendant answers in federal court or takes other affirmative steps to submit to federal jurisdiction.  *See, e.g., Belasco v. W.K.P. Wilson & Sons, Inc.*, 833 F.2d 277, 279 & 282 (11th Cir. 1987) (inferring the joinder in removal of a defendant who filed a motion for summary judgment in federal court). In addition, a plaintiff may waive his or her objection to the lack of consent of all

### a.      Federal Question Jurisdiction

No party disputes that this Court would have original jurisdiction over this case if it had been filed initially in the district court.  The Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. 1331 *et seq.*, provides a broad grant of jurisdiction to federal courts for any case or controversy arising out of oil and mineral operations conducted on the continental shelf, including exploration, development, or production of minerals.  43 U.S.C. 1349(b)(1); *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996).  This case involves a dispute over who is owed an overriding royalty.  Under Louisiana law, an overriding royalty is a real right in minerals.  La. R.S. 31:16; *Terry v. Terry*, 565 So.2d 997, 1000 (La. App. 1st Cir. 1990).  The "overriding royalty" is usually a fractional interest in the production of oil and gas that is reserved from the lessee's mineral estate; the term apparently has several meanings within the oil and gas industry.  38 AM. JUR. *Gas & Oil* § 215.  In any event, the dispute in this case involves rights to minerals in federal offshore leases off the coast of Louisiana, and as such, this Court would have original jurisdiction under OCSLA had the case been filed here initially.[2]

### b.      Realignment of Parties and the "Mainspring" Test

Because the Court would have original jurisdiction over this case, Dominion's failure to obtain Cheyenne's consent is merely a procedural defect in removal, and is not jurisdictional.

---

defendants by failing to promptly assert such an objection or by otherwise proceeding with pretrial discovery.  *Harris v. Edward Hyman Co.*, 664 F.2d 943, 944 (5th Cir. 1981).  However, neither of these situations are present in the instant case:  Cheyenne has made no appearance that would permit the Court to infer its consent, and Energy Partners has made timely objection to the lack of Cheyenne's consent.

   [2]  It should additionally be noted that all of the parties in this case are not Louisiana citizens.  Thus, there is no potential prejudice to any party due to "home field advantage" if this case is remanded to a Louisiana state court.

*See Harris*, 664 F.2d at 945.  Instead of seeking Cheyenne's consent to removal, Dominion asks

the Court to cure the procedural defect by asking the Court to "realign" the parties in this

proceeding, and to consider Cheyenne a "plaintiff" rather than a defendant in the action.

A federal court is not bound by the designations that the parties give each other in a

complaint.  "For the purposes of removal, the federal law determines who is plaintiff and who is

defendant."  *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 579 (1954).  *See also Mason City*

*& Fort Dodge R.R. Co. v. Boynton*, 204 U.S. 570, 579 (1907) (finding that the federal court must

look beyond the parties' labels to their actual interests to determine who is a plaintiff and a

defendant for purposes of removal).[3]

To determine whether Cheyenne should be considered a plaintiff, Dominion argues that

the Court should apply a functional test that asks which parties are aligned in the "mainspring"

of the proceeding, that is, which parties share an interest in the substantial portion of the relief

sought.  *See Mason City,* 24 U.S. at 580 (using the term "mainspring of the proceedings").  The

Fifth Circuit has not spoken on this issue and has not adopted this test for purposes of consent to

removal.

Dominion cites to two cases that it argues support the Court's use of the "mainspring"

test.  In both cases, one from the Second Circuit and one from the Ninth Circuit, courts realigned

plaintiffs and defendants for purposes of determining the citizenship of the parties for diversity

jurisdiction.  *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 355-56 (2d Cir. 1995); *Dolch*

---

[3]  Energy Partners has argued that because the state court action was a concursus
proceeding, Louisiana law dictates that each party should be considered a plaintiff *and* a
defendant for purposes of removal.  *See* La. Code Civ. Proc. art. 4656.  Energy Partners is simply
incorrect.  As stated above, federal law, not state law, dictates how the Court should align the
parties for purposes of removal.

*v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983).  Neither of these cases articulates a clear "test" or analysis for realignment of parties.  Moreover, *Oppenheimer* only stands for the proposition that in some cases parties other than a defendant may have a right to remove.  56 F.3d at 356.   Neither of these cases involved consent to removal by a non-removing defendant.

The distinction between realigning parties for diversity jurisdiction and for consent to removal is an important one.  When a court examines the parties' positions for diversity jurisdiction, it is examining an issue that is at the heart of the court's ability to resolve the dispute;  the court is mandated to do what is necessary to determine whether it has jurisdiction. The Fifth Circuit has stated that "*when it relates to jurisdiction*, it is our duty to notice party alignment and apply proper realignment[.]"  *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178 (5th Cir. 1984) (emphasis added).  However, consent to removal is not a jurisdictional issue:  it is a procedural defect that can be cured.  Therefore, the Court is under no *duty* to realign the parties to cure Dominion's procedural failure to obtain Cheyenne's consent.  It is unclear that the "mainspring test" is even applicable in this Circuit and that it would apply to the defect of lack of consent to removal.

In post-hearing briefs, Dominion urges that the Court must hold that realignment of parties would apply to federal question cases in which the consent to removal of all defendants is not obtained, because an adverse ruling would make it more difficult for federal question cases to be removed than diversity cases.  The Court believes that Dominion's concerns are unfounded.  When procedural, rather than jurisdictional, defects are involved in removal cases, district courts enjoy broad discretion to permit the parties to cure those defects.  28 U.S.C. § 1653.  *See, e.g., Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1262 (5th Cir. 1988)

-7-

(allowing amendment of removal petition pursuant to Section 1653 to allege more specifically the citizenship of a defendant for purposes of diversity jurisdiction).   That is true for cases involving both federal question and diversity jurisdiction.  The district court is only required to realign the parties when the court's jurisdiction is at issue.  *Lowe*, 723 F.2d at 1178.

In any event, while the Court believes that realignment of the parties probably does not apply to this case, the Court need not decide that issue.  Even if realignment were to apply to a case like this, realignment would not be proper in this case, as the Court shall discuss.

      **c.**      **Whether Realignment of Parties Would Apply to this Case**

If realignment of the parties would be appropriate for purposes of consent to removal, there is a Fifth Circuit analysis that would be used.  In *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178 (5th Cir. 1984), the Fifth Circuit determined that the parties in that case should have been realigned for purposes of diversity jurisdiction.  The Fifth Circuit stated that, in doing so, a court should determine "whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side."  *Id.* at 1178 (citing WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE, JURISDICTION § 3607).  In addition, the court should look at "the principal purpose of the suit and the primary and controlling matter in dispute."  *Id.* (citing *Indemnity Ins. Co. v. The First Nat'l Bank*, 351 F.2d 519, 522 (5th Cir. 1965)).

Dominion argues that Cheyenne and Energy Partners share identical interests in this litigation because both would seek a finding from the Court that they do not owe Dominion any overriding royalties.  Because both Cheyenne and Energy Partners wish to escape liability, Dominion argues that they share identical interests.

Energy Partners disagrees, arguing that there are significant differences between its

-8-

position and that of Cheyenne.  Both Cheyenne and Energy Partners believe that they do not owe Dominion any overriding royalties, so in that sense they share the same interest.  However, Energy Partners argues that there will be a significant dispute between the two parties if the Court finds that they are liable for the royalties, in that Cheyenne will seek reimbursement from Energy Partners if the royalties are owed.  Also, Energy Partners argues that Dominion may seek damages for non-payment of the overriding royalty, and there will be a significant dispute over who is liable for those damages, if they are owed.

While Energy Partners and Cheyenne have similar interests, these interests are by no means identical.  While the payment of the overriding royalty is the central question in the suit, the important secondary question of who is liable for payment of the royalty and of damages make Energy Partners and Cheyenne's interests in this suit diverge significantly.   For that reason, realignment of the parties would be inappropriate in this case.

Because the parties cannot be realigned, Defendant's Notice of Removal is defective, and the case must be remanded.  However, because Dominion removed the case in good faith, the Court shall not award attorney's fees to Energy Partners.

## IV.  Conclusion

Accordingly, Plaintiff's Motion for Remand and for Attorneys Fees is GRANTED IN PART AND DENIED IN PART.  IT IS ORDERED that the case is REMANDED to the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.  However, Plaintiff's motion for attorneys' fees is DENIED.

New Orleans, Louisiana, this ___18th___ day of April, 2006.

UNITED STATES DISTRICT JUDGE